Good morning, Counsel. Good morning, Your Honors. Kathleen Young from the Federal Public Defender's Office for Appellant Michael Williams. I'd like to reserve about three minutes of my time and I will try to watch the clock as I proceed. Thank you, Counsel. Mr. Williams is here challenging his 924C counts. The COA was issued on whether his conviction under 924C must be vacated in light of Johnson. The COA was issued in 2017, so there's been a lot of water under the bridge since then. And whether Hobbs Act robbery is a crime of violence under 924C. So Mr. Williams was convicted of conspiracy to commit Hobbs Act robbery, Hobbs Act robbery including under Pinkerton theory and 924C use of a firearm during a crime of violence. He was sentenced to life on the 924C counts. Could I ask you, do we have to change our COA, expand our COA to get at what you want us to get at? I don't think so, Your Honor. I'll take that, I'll take that because you don't have a lot of time. I'll just take the yes from you. I think it's fine. So can you frame the question you want us to, because as you said, this briefing has spanned a long time. So the question you want us to reach today on 924C is whether conspiracy to commit Hobbs Act robbery is a crime of violence or whether Hobbs Act robbery is a crime of violence or something else. We're challenging all three predicates. All right. So there's a 924C count which has three predicates. We're challenging all three of them. And I think that's within both of the two COAs. In fact, because the first one which invalidates Johnson, that Johnson invalidated the residual clause. So all that was left was the fourth clause. And essentially we're claiming that the three predicates are invalid, don't constitute, don't have the element of force as to Mr. Williams. Which of those, please, are you arguing just to preserve? Because there's been a case law development since the time you filed. Yes, there have been. I mean, we think that they are invalid. There are on two of the issues, cases against us, which attempted to distinguish in our briefs. But we do think that there are reasons to their intervening authority and maybe the lurking theory that issues which merely lurk in the record but weren't decided can apply to those cases. But on two, there are cases that are against us that we're trying to distinguish or argue should be revisited. So Mr. Williams went to trial in 2010. The jury was instructed with respect to the robbery in the 924C counts, there were two ways to prove him guilty. By committing the crime himself or by being part of a conspiracy during which the reasonably foreseeable crime of robbery and knowing use of a firearm was committed. Are you focusing on Instruction 18? There are a number of Pinkerton instructions that we're focusing on. I think there's five separate ones. So just so you both know that these instructions are unfortunately numbered several times and you're using them differently. And so the ER sites get pretty muddled on our end. So hence my question. Yeah, I'm sorry. I think there are several Pinkerton instructions and basically we're challenging the Pinkerton theory. Well, right. So maybe I could do it this way. You have argued that the jury could have found that conspiracy to commit Hobbs Act robbery was a qualifying predicate on this set of instructions. Can you point me to the instruction that you think told the jury that? I don't know if I have an ER site in my notes. Is it one of the 924C instructions? Those are 18 and 19. It's I have instructions where the the government argued, which is SCR 2806. And the government argued that predicate. I'm trying to figure out. I understand today you're arguing instructional error. Yes. And the government argued the predicate. And I think there's also elements that are cited within the instruction itself that also permit. I understand that. But maybe when you come back, if you could tell me exactly which instruction you want us to look at for the instructional error argument. I think I've got ER 174. Each member of a conspiracy is responsible for the actions of the other conspirators. If one member of a conspiracy commits a crime in furtherance of a conspiracy, the other members have also under the law committed that crime. So why is that instruction erroneous? Well, because conspiracy has been held to be an invalid predicate for 924C. And the government concedes that. The government doesn't dispute that conspiracy is an invalid predicate. But you have to look at all of the instructions, correct? Yes. And so would any error be harmless if the other instructions properly covered the proof at trial? Well, I think that there are different instructions. There are some instructions are conspiracy, some instructions on Pinkerton, which is a conspiracy with reasonable foreseeability thrown in. And some on Hobbs Act robbery. Yes. So I think there's... I'm sorry. I didn't mean to interrupt. You're fine. But we're trying to get to... Your position is that there were three predicates. And you think at least one was not a qualifying predicate. But you're arguing instructional error. I don't think the government is contesting that at trial they argued that conspiracy to commit Hobbs Act robbery was a qualifying predicate. And they've now backed off that, of course, because the case law has changed. But I'm understanding you to be arguing quite specifically that the jury, looking at these instructions, could have gotten this wrong. And, you know, since you've got at least one, I think you're... Well, I think there's at least... That's what the district court thought. And I'm certainly inclined to agree that there's at least one qualifying predicate here in the instructions for Hobbs Act robbery. Straight up or through a Pinkerton theory. But if there is one, at least one qualifying predicate, and if we find that, then we do a harmless error analysis, right? That's our argument under Reed. OK. And so do you want to go to that and explain if we get to harmless error analysis, why this would cut in favor of your client? Well, because we're arguing the jury could have found culpability and found him guilty based on a theory that has since been invalidated. And since we don't know which theory the jury ultimately found on, then the law says if there's a lack of clarity and the jury could have found an invalid predicate, then it needs to be validated. That is the harmless error analysis. Yes. The district court recognized that and he said even if that conspiracy to commit Hobbs Act robbery instruction was incorrect or if the jury misunderstood that, that's certainly what the government argued. I'll grant you that. That there was another predicate that the jury was instructed upon and the government tried its case to, which is that both Mr. Williams and Mr. Johnson were actually robbers and that qualifies. So then he went to a harmless error analysis, right? The district court did to decide. And can you go run through that please and give us your best argument for why you think that the jury wouldn't have relied on Hobbs Act robbery? Well, because we think that the evidence is very murky in this case. There's no witnesses identifying Mr. Williams, even though there were a lot of witnesses. The only thing that tied him was a glove that was found down the street under debris that had his DNA on it, but wasn't otherwise tied to the robbery. There was no gunshot residue on the glove. There was no one who identified one of the robbers as wearing that type of glove. So the attachment of that glove to the robbery wasn't clear. What about Jamal Dunnigan's testimony? Yeah. Let me get to that too. There were also two snitches that testified, Dunnigan and another one whose name I am always forgetting, but they're both Jackson. They're both, Jackson, especially was a professional snitch who basically told people, I will teach you how to make up lies in order to convict someone. And he did in this case, made up stuff about the offense that was not true. He was a cellmate to Mr. Williams. Yes. And the cell was recorded. It was monitored by the guards. So it's insane to think that Mr. Williams would have confessed his crimes to Mr. Jackson. Jackson, knowing that he's being recorded. But Mr. Dunnigan was also characterized by the district court, not only as a robber and a serial, but as someone who was incredible whose testimony had been impeached. So we're claiming that the evidence, again, if the jury disregarded the testimony of the snitches, then all they had was some uncertain potential connection that was created by the DNA on the, on the glove. And they could have found that he was somehow involved, but they didn't know how, but part of the conspiracy. So they found him guilty on a conspiracy theory if they had rejected the snitches because the evidence is just so unclear. So that's why we are arguing that it is prejudicial. And we're also attacking the other theories of Pinkerton and Hobbs Yacht Property. So let me try to go very quickly into Pinkerton because I've only got 59 seconds left. What is your strongest Pinkerton argument? In light of Henry, we've got the Henry authorities. What's your strongest Pinkerton argument? Okay. In Pinkerton, it's a negligence theory. It's a reasonable foreseeability negligence theory. Now, Henry said that we don't have to look at the elements of accomplice liability because accomplice is found as liable as the principal. But in fact, that's inconsistent with other lines of authority in this court, Valdivia and Alfred, which say we do have to in the categorical analysis, look at elements of accomplice liability. It's inconsistent with Rosamond, who said that an accomplice has to have knowledge, advanced knowledge sufficiently in advance of the use of the gun so that he can proceed with the offense with a knowing use of the gun. We also contend that a Pinkerton theory of negligence is incompatible with a long line of authority from the Supreme Court, starting with Leocal saying that you can't predicate a crime of violence on a negligence mens rea. And continuing even after Henry in the Borden and Taylor cases where the court said you have to focus on the defendant's use, threatened use or attempted use of violence and that it can't be a reckless theory. So we can, we contend that all these arguments, the landscape of the Supreme Court, the incompatibility of the two lines of authority in the Ninth Circuit require revisiting whether Pinkerton on a negligence theory is sufficient for a crime of violence. All of that other intervening authority, your position is that it as a package deal, and you've briefed this and you know, appreciate that very much that that case law under sufficiently undermines Henry. Yes. I think Borden and Taylor follow Henry and we're also arguing that Henry didn't act, didn't consider, but none of them directly relate to what you're talking about, which is Pinkerton. Henry's the one that goes to Pinkerton and in order for us to not be bound by Henry, which is the Pinkerton requires that we for, for a nine to four C analysis, we treat the underlying the conviction the same. Right. And so I think what you have to do is show that all of that, that package of authority sufficiently undermined Henry's. Do I, do I misunderstand your argument? No, I understand. That is what we're saying. We're saying Henry is incompatible with another line of authority. Valdivia and Alfred saying you have to look at the elements of accomplice liability. It doesn't really consider Rosamond because it's relying on no Sal and no self was relying on a comp aiding and abetting, which does comply with Rosamond as opposed to Pinkerton, which does not. And then we're arguing that the Supreme Court, even after Henry continued in its cases, not necessarily Pinkerton, but with the elements that must be found to convict the defendant of a crime of violence. So, and I see I'm well over my time, so.  Thank you, counsel. We'll give you a minute for rebuttal. Thank you, Your Honor.  Good morning, Your Honors. May it please the court. Sariya Bahadur on behalf of the United States. So I do just want to address a few things before getting into my argument. I do think the court would have to expand the certified issues because the court did not certify the issue for this case with respect to whether or not Hobbs Act robbery committed under a Pinkerton theory of liability is a crime of violence. So. Right. And, and yes. So can you go to the government's changing what I, the COA in this case is right. Whether this 924C had to be vacated in light of Johnson and whether Hobbs Act robbery constitutes a crime of violence. But in Johnson's case, the COA is neither conspiracy to commit Hobbs Act robbery, nor Hobbs Act robbery under Pinkerton theory qualifies a crime of violence. That's correct. So I think in the Johnson case it is one of the certified issues, whereas here it's not. That said, obviously Hobbs Act robbery is a crime of violence under Dominguez and now Eckford, and our position is that Pinkerton is a form, is an alternative means of committing the underlying offense. And so by finding that Hobbs Act robbery is a crime of violence, so too is Hobbs Act robbery when committed under a Pinkerton theory of liability. The government's position has changed from the district court. In terms of whether there was an instructional error. Yes. Yes. And I, you know, I think it's just in reviewing the instructions a little bit more closely and your honor's right. It is instruction number 18 and it's at ER 172 and it's instruction number 19, which starts at ER 174 in this case. And it's really because when you look at it, the instruction talks about two ways that you can commit this 924C and one is by committing the robbery yourself, committing the robbery as the robber. But then when it actually goes into the conspiracy, the second way, and, you know, the government... I think it's a pattern in Pinkerton. I do think, we think so too. I don't, I'm not suggesting that I disagree with you about how the instructions read, but it is a peculiar posture that we find ourselves in because the case wasn't tried that way.  And then at 92255, the government didn't argue it that way. Yeah. And so now you are asking us if I agree with you, if the panel agrees with you more importantly, about how those instructions read now, it does mean, I think, that we're saying that the instructions at the time of trial didn't pattern the government's theory. I think that's right. Peculiar to say the least. I think that's right. I do think, and we recognize there's a tension, and at the end of the day, the standard on harmless error review in this habeas posture is to look at the entire record. Well, I think that's what saves you, I think, if I'm understanding your theory, because otherwise this is a pretty gutsy move for the government to take the position that what it argued at trial didn't match the instructions. And the jury should have known that even though the government didn't know that. That's fair. That's fair. I'm trying to give you a hard time, but I am trying to make sure that I understand what we're doing here. I think that's consistent in your end, isn't it? Yes. But I think that the point that we were trying to make is that if you are going to claim as a petitioner in a habeas posture that this instructional error was so substantial and injurious, then it should really be an instructional error. And when you look at this instructional error, it's not your typical instructional error where you have it really well defined in terms of your invalid predicate versus your valid predicate. Well, or maybe you did. Doesn't this all wash out? The district court's reasoning was maybe there's an instructional error over here. And I think he even accepted that there was, because that was the government's position after all. Yes. But that he had a valid predicate in Hobbs Act robbery. We do think it all washes out because the government's theory at trial was that these two individuals, and we say this in our closing argument, the only dispute is whether or not defendant Williams and defendant Johnson were the ones firing and shooting the weapons. So let me ask you this then, if it's Hobbs Act robbery is the valid predicate, and I think that our case law establishes that at this point, then there's another way that the government could lose or the defendants could win, depending on your perspective here. And that is that if it's not correct, you get two Hobbs Act robbery theories, right? One is the direct commission of the offense and one was Pinkerton. So even on count two, if the jury, we don't, it was a general verdict. So if the jury had relied on count two Pinkerton only, that would be another potential vulnerability to the government's case. And for that, I think you have to be relying on Henry. Yes. I think the only way actually for the petitioners to prevail is if this court were to overrule Henry. And I say that because there's really two paths to affirmance here. One is in terms of the harmless error analysis, one is factual and one is legal. And when you look at the legal path, even if this defendant was some planner and the jury found him guilty of conspiracy, he still, that finding necessarily means he would have been found guilty of substantive Hobbs Act robbery under Pinkerton theory of liability. And so I think the court, I think the only way that the petitioners can prevail, even if this court did not get into this, into the facts, which we still think is a great argument and a strong argument, is for the court to overrule Henry. And we don't think there's a basis to do so. What do you make of the distinction your friend draws in terms of the mens rea and how concerned should we be about this is essentially, I mean, whether we're bound by Henry, but it does seem like we're reading a negligence theory into the use of the firearm here. I don't think in Henry, the court did grapple with this. This was one of the main arguments and the court thought it through, including with the perspective of Rosamond and specifically said, Rosamond may have held advanced knowledge. It's required for aiding and abetting liability, but it did not hold that for Pinkerton. And I think at the end of the day, Pinkerton itself specifically says that the intent happens at the formation of the conspiracy. And one has to knowingly enter the conspiracy. Exactly. And when you, and when we're looking at the under, when we look at intent for conspiracy, we're always looking at the intent of the underlying substantive crime. I shared Judge Johnstone, I was on Henry, I think as you might know, and I shared Judge Johnstone's concern. 924C adds a lot of jail time. And so when we're talking about that, we take that very seriously when we're, we can't really tell what Congress intended here, right? Because this isn't personal use necessarily, personal use of a firearm. So it's a, it is a, it is a conundrum. I, at this point, it seems that we're bound by Henry as Judge Johnstone acknowledged. I think so too. And I think it's difficult. I think so too. But I think I would say the 924C, the actual language of it is not whether the defendant used force, it's whether the offense involved force. I agree. So there's not really this personal use requirement. Well, we grappled with it. Of course. I think it's a tough call. Of course. And I think I would, I would defer the court to Henry. I think the analysis was incredibly thorough in that case. And I think the court grappled with it as well. And just like any other alternative form of liability, the accomplice is treated just like the principal, and that's something that has existed in this court's jurisprudence for quite some time. What about the factual analysis here? The district court also went through the facts quite carefully. As to Mr. Williams, the Burgess testimony didn't come in. Correct. It was pretty thoroughly impeached anyway. And opposing counsels argued that the Jamal Dunnigan testimony was also quite thoroughly impeached. The jury could decide what they wanted, I guess, as to that. And then there's the DNA evidence, right? Is there anything else for Mr.  I don't believe so. I think the court has it right. There's the DNA match on the latex glove. There's the witnesses who saw armed robbers. There are gardeners who saw the latex gloves drop as they passed by, or a clip as well as a magazine clip as well. And I think when you look at the cooperator testimony, there's quite a bit that is corroborated by the physical evidence. I think one of the cooperators was told by Williams that he was worried because he dropped a magazine clip. One of the cooperators was told how much money was involved in the robbery. And that's something that they wouldn't know unless they were told that by one of the robbers. And so, you know, I take counsel's point about cooperators, but at the end of the day, the jury heard all of this evidence and they are the finders of fact. And I think in Montalvo, this court specifically said on a deferential standard of review, we're not in a position to question the credibility findings of the jury. And that's another habeas case, harmless error analysis. And even in Reed, the court was very specific to say, it's not whether the evidence points to guilt. We know that they were found guilty, but beyond a reasonable doubt, it's whether or not there was a substantial and injurious effect. And here, all of the facts from the conspiracy, particularly with Williams, comes from the robbery on the ground that day when they ended up murdering the armored truck driver. In the formation of the conspiracy. Yes, I think with... Yes, it was a coordinated effort. Yes, exactly. I mean, in closing, the government specifically walked through how they wore gloves, wigs, brought guns, had getaway cars, and then the government summarized all of that by saying all of that took planning. And so we think, unless the court has further questions, because I see I'm running down on time. It appears not. Okay. We ask that the court affirm. Thank you. Thank you, counsel. One minute for rebuttal. Thank you, Your Honor. I did want to respond to one comment that Ms. Bahadur said about gardeners who saw the gloves dropped, and this was discussed in the brief. The gardeners did not see the gloves dropped, and what they saw dropped was not the glove that was found in the street, because the gardeners saw a glove dropped on the sidewalk, which they said they assumed had been dropped by the robbers, not that they saw it dropped by the robbers. They assumed it had been because it hadn't been there before because they kept the sidewalk clean. But the glove that was tied to Mr. Williams was found in the street under debris, and that makes it even more attenuated in its connection to the robbery. And I see I'm running out of time, so unless there are any further questions. No, thank you, counsel. Thank you to both counsels for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, JOHNSTONE